UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ARTHUR ROUSE,

     Petitioner,

                                    Case No. 06-10724

v.

                                    Honorable Patrick J. Duggan

BLAINE LAFLER,

     Respondent.
_____/

**OPINION AND ORDER DENYING PETITION
FOR WRIT OF HABEAS CORPUS**

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on December 3, 2007.

PRESENT:       THE HONORABLE PATRICK J. DUGGAN
                         U.S. DISTRICT COURT JUDGE

On February 17, 2006, Petitioner Arthur Rouse filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Petitioner, who is currently incarcerated at the Pine River Correctional Facility in St. Louis, Michigan, challenges the Michigan Parole Board's ("MPB") refusal to release him on parole. For the reasons set forth below, the Court will deny the petition.

**I.    Background**

In 1998, Petitioner pleaded guilty to two counts of third-degree criminal sexual conduct. The convictions arose from the repeated sexual assault in 1984 of a young boy

befriended by Petitioner. On November 6, 1998, he was sentenced to concurrent terms of ten to fifteen years imprisonment for each conviction.

In his petition, Petitioner challenges the MPB's decisions denying him release on parole, most recently on January 30, 2006. Petitioner presents the following claims:

> I. The State of Michigan's denial of parole to Mr. Rouse under the facts and circumstances of this particular case with a high probability of parole constitutes a violation of due process clause of the United States Constitution.
>
> II. Applying the 1992 parole laws and the 1996/2000 parole guidelines to Mr. Rouse's 1984 charges and denying him parole violates the Ex Post Facto Clause of the United States Constitution by increasing the punishment after the crimes were committed according to *Garner v. Jones*, 529 U.S. 244 (2000), *Warden v. Marrero*, 417 U.S. 653 (1974), *Michens v. Thomas*, 231 F.3d 948 (3d Cir. 2003) and *Prater v. United States Parole Com'n*, 802 F.2d 948 (7th Cir. 1999).
>
> III. Mr. Rouse's right to a fair hearing with a neutral and detached quasi-judicial parole board was denied three times which violated the Due Process Clause of the Fourteenth Amendment because the parole board is categorically denying parole to prisoners with violent type charges and they have a pecuniary interest in denying parole to obtain federal funding according to the Michigan Department of corrections study titled Five Years After.

**II. Analysis**

**A. Exhaustion of State Court Remedies**

Respondent argues that the petition should be dismissed because Petitioner has failed to exhaust his state court remedies with respect to all of the claims presented in his petition. Petitioner admits that he has not challenged the parole denial in state court, but

2

argues that no avenue is available for exhaustion of his claims. *See* 28 U.S.C. § 2254(b)(1)(B)(i).

The doctrine of exhaustion of state remedies requires state prisoners to "fairly present" their claims as federal constitutional issues in the state courts before raising those claims in a federal habeas corpus petition. *See* 28 U.S.C. §§ 2254(b)(1)(A) and (c); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842, 119 S. Ct. 1728, 1731 (1999). The exhaustion requirement is satisfied if a prisoner invokes one complete round of the state's established appellate review process, including a petition for discretionary review to a state supreme court. *O'Sullivan*, 526 U.S. at 845, 119 S. Ct. at 1732-33. In Michigan, a petitioner must present each ground to both Michigan appellate courts before seeking federal habeas corpus relief. *See Mohn v. Bock*, 208 F. Supp. 2d 796, 800 (E.D. Mich. 2002); *see also Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). Exhaustion is not required where a remedy in state court is unavailable. *O'Sullivan*, 526 U.S. at 847-48, 119 S. Ct. at 1733-34. Thus, the Court must determine whether Michigan courts provide a means through which Petitioner may challenge the denial of parole.

Under Michigan law, there are "three potential avenues of review by which an aggrieved party may challenge an administrative body's decision: (1) review pursuant to a procedure specified in a statute applicable to the particular agency, (2) the method of review for contested cases under the Administrative Procedures Act (APA) . . . , or (3) an appeal pursuant to § 631 of the Revised Judicature Act . . . ." *Hopkins v. Parole Bd.*, 237 Mich. App. 629, 637-38, 604 N.W. 2d 686, 691 (1999). According to the Michigan Court of Appeals decision in *Morales v. Parole Bd.*, 260 Mich. App. 29, 36-42, 676 N.W.

2d 221, 227-30 (2003), a prisoner's right to appeal a denial of parole is unavailable under any of these three potential avenues. *See also Jackson v. Jamrog*, 411 F.3d 615, 618 (6th Cir. 2005)(holding that a habeas petitioner's failure to exhaust his or her state remedies with respect to a denial of parole "is excusable under § 2254(b)(1)(B)(i), because 'there is an absence of available state corrective process'"). Therefore, the Court finds there is an absence of available State corrective process and shall not dismiss the petition on exhaustion grounds. In the alternative, even if Petitioner did have a method of challenging the denial of parole, by means of a state writ of habeas corpus or mandamus, the Court believes that resolving Petitioner's application on the merits is proper, notwithstanding Petitioner's purported failure to exhaust. *See* 28 U.S.C. § 2254(b)(2).

### B. Alleged Due Process Violation

Petitioner argues that the his right to due process has been violated by the MPB's decisions denying him release on parole. Petitioner acknowledges that there is no right under the Constitution for a lawfully "convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1, 7, 99 S. Ct. 2100, 2104 (1979). Nonetheless, he argues that Michigan has created a liberty interest in parole by its statutory scheme. More specifically, Petitioner argues that his parole guidelines score, which fell into the "high probability of parole" category, created a limited liberty interest in parole.

Petitioner's argument is unavailing. In 1994, the Sixth Circuit held that Michigan's statutory parole scheme does not create a liberty interest in parole. *Sweeton v. Brown*, 27 F.3d 1162, 1164-65 (6th Cir.1994)(en banc). Since issuance of the *Sweeton* decision, the

Sixth Circuit has repeatedly reaffirmed its holding that Michigan has not created a liberty interest in parole. *See, e.g., Caldwell v. McNutt*, 158 Fed. Appx. 739, 740-41 (6th Cir. 2006); *Ward v. Stegall*, 93 Fed. Appx. 805, 806 (6th Cir. 2004); *Bullock v. McGinnis*, 5 Fed. Appx. 340, 342 (6th Cir. 2001). Furthermore, while the statutory provision relied on by Petitioner may provide specific parole guidelines for prisoners who have "high probability of parole," MICH. COMP. LAWS § 791.233e(6),[1] a state's parole scheme may be specific or general with respect to the factors to be considered in parole determinations without creating a liberty interest in parole. *See Greenholtz*, 442 U.S. 7-8, 99 S. Ct. 2104; *see also Giegler v. Trombley*, No. 04-73471, 2007 U.S. Dist. LEXIS 71811, at 2007 WL 2868103, * 3 (E.D. Mich. Sept. 27, 2007)(rejecting a claim that "high probability of parole" classification created liberty interest in parole); *Porter v. White*, No. 04-10065, 2007 U.S. Dist. LEXIS 12398, at *9, 2007 WL 470648, at *8 (E.D. Mich. Feb. 5, 2007)(same). Consequently, because Petitioner has no liberty interest in parole, he cannot establish the MPB's decision denying release on parole violated his rights under the Due Process Clause.

---

[1]Section 791.233e(6) provides in relevant part:

> The parole board may depart from the parole guideline by denying parole to a prisoner who has a high probability of parole as determined under the parole guidelines . . . . A departure under this subsection shall be for substantial and compelling reasons stated in writing. The parole board shall not use a prisoner's gender, race, ethnicity, alienage, national origin, or religion to depart from the recommended parole guidelines.

MICH. COMP. LAWS § 791.233e(6).

## C. Ex Post Facto Clause

In his second claim, Petitioner argues that application of the 1992 amendments to Michigan's parole statute to his case violates the Ex Post Facto Clause. Petitioner argues that the 1992 amendments, which emphasized "public safety" as a key factor in making parole release decisions, significantly decreased his chances of being released on parole, thereby retroactively increasing his punishment.

The Ex Post Facto Clause of the Constitution, U.S. CONST. art. I, §§ 9 and 10, forbids the government from passing any law "which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." *Weaver v. Graham*, 450 U.S. 24, 28, 101 S. Ct. 960, 964 (1981) (internal quotation omitted). "To fall within the ex post facto prohibition, two elements must be present: (1) the law must apply to events occurring before its enactment, and (2) it must disadvantage the offender affected by it." *United States v. Reese*, 71 F.3d 582, 585 (6th Cir. 1995). "Retroactive application of parole provisions falls within the ex post facto prohibition if such an application creates a 'sufficient risk of increasing the measure of punishment attached to the covered crimes.'" *Dyer v. Bowlen*, 465 F.3d 280, 285 (6th Cir. 2006)(quoting *Garner v. Jones*, 529 U.S. 244, 250, 120 S. Ct. 1362, 1367 (2000)).

A petitioner challenging the retroactive application of parole provisions can sustain his or her burden in one of two ways. *Michael v. Ghee*, 498 F.3d 372, 384 (6th Cir. 2007). "First, [petitioners] can establish an ex post facto violation if they can show that the [challenged parole provisions], on their face, show a significant risk of increased incarceration." *Id.* Second, "[w]hen the [challenged parole provisions] do not by their

6

own terms show a significant risk, the [petitioner] must demonstrate, by evidence drawn from the [provision's] practical implementation by the agency charged with exercising discretion, that its retroactive application will result in a longer period of incarceration than under the earlier rule." *Garner*, 529 U.S. at 255, 120 S. Ct. at 1370.

This Court does not believe that Petitioner has sustained his burden under either of the above-mentioned options. With regard to the first option, to the extent Petitioner's challenge is based upon the Michigan legislature's 1992 amendment to the parole statute requiring the MPB when developing "parole guidelines" to consider "public safety," *see* MICH. COMP. LAWS § 791.233e(1), Petitioner has not shown that the amendment, on its face, creates a sufficient risk of increased punishment as applied to him.

With respect to the second option, Petitioner seemingly relies on the 1997 report entitled "Five Years After," which was published by the Michigan Department of Corrections, to support his claim. (Pet. Ex. 13.) The "Five Years After" report is "[a]n analysis of the Michigan Parole Board since 1992." (*Id.*) The report does contain several graphs, which seem to show a decrease in the approval rate for parole candidates, an increase in the number of prisoners who are serving sentences longer than their minimum sentences, and an increase in the number of prisoners serving their maximum sentences. (*See id.*) Furthermore, the "Five Years After" report also states that "[t]he New [Parole] Board is also making more sex offenders serve longer past their minimum sentence imposed by the court." (*Id.* at 4.) The Respondent does not address Petitioner's reliance on the "Five Years After" report.

This Court cannot conclude based on these general statistics and the statement that

7

the parole board is making sex offenders serve longer than their minimum sentence that the application of the 1992 amendments to Petitioner has resulted in a "sufficient risk of increasing the measure of punishment attached to the covered crimes." *Garner*, 529 U.S. at 250, 120 S. Ct. at 1367. The most recent Parole Board Notice of Decision denying Petitioner parole weighed a number of separate factors. (*See* Doc. No. at 3-4.) Furthermore, there is no evidence in the record showing that a prisoner who received an assessment similar to that of Petitioner would have likely been granted parole before the 1992 amendments. Without such evidence, Petitioner has shown that the application of the 1992 amendments to him creates nothing more than "some ambiguous sort of 'disadvantage.'"[2] *Morales*, 514 U.S. at 506 n.3, 115 S. Ct. at 1602 n.3. Therefore, Petitioner has failed to show that the retroactive application of the 1992 amendments will result in a longer period of incarceration for his crimes than the earlier parole statute.[3]

---

[2]This Court finds Petitioner's reliance on *Mickens-Thomas v. Vaughn*, 321 F.3d 374 (3d Cir. 2003) unpersuasive. Although the petitioner in *Mickens-Thomas* was a convicted sex offender making similar arguments as the Petitioner in this case, this Court believes that the evidence in *Mickens-Thomas* showing that the new parole board gave much greater weight to "public safety" was much more compelling that the "Five Years After" report Petitioner relies on here. For example, the statistical evidence in *Mickens-Thomas* showed that "of the 266 historical instances of commuted sentences on which the board has kept records, all were granted parole on the first or second application." *Id.* at 385. On the other hand, the statistical evidence in this case is much more general and equivocal.

[3]The Court acknowledges the Judge Marianne O. Battani's recent decision in *Foster Bey v. Rubitschun*, 05-71318 (E.D. Mich. Oct. 23, 2007). In *Foster Bey*, the court held that applying the 1992 and 1999 amendments to Michigan's parole statute to a class of prisoners who committed crimes for which they received a parolable life sentence before the effective date of the 1992 amendments resulted in an ex post facto violation. In so holding, the court referred to deposition testimony, submitted declarations of various witnesses, and statistics gathered by the Citizens Alliance on Prisons and Public

For the foregoing reasons, Petitioner is not entitled to habeas relief on his ex post facto claim.

**D. Alleged Violation of Right to Neutral and Detached Decision Maker**

Finally, Petitioner argues that he has been denied his right to a neutral and detached decision maker because members of the MPB have a pecuniary interest in denying parole. The alleged pecuniary interest is two-fold. First, Petitioner alleges that parole board members will be terminated if they are too lenient in granting parole. Second, Petitioner argues that federal funding is tied to parole rates and the Michigan Department of Corrections ("MDOC"), consequently, is financially motivated to parole fewer inmates in order to obtain more federal funding.

"The Supreme Court has held that the Fourteenth Amendment right to due process is certainly compromised where the decision maker has a 'direct, personal, substantial pecuniary interest' in the proceedings." *DePiero v. City of Macedonia*, 180 F.3d 770, 777 (6th Cir. 1999)(quoting *Tumey v. Ohio*, 273 U.S. 510, 523, 47 S. Ct. 437, 441 (1927)). In this case, Petitioner speculates that because some MPB members were terminated for allegedly being too lenient in granting parole, the current MPB members must, out of self-preservation, deny parole to maintain their jobs. This Court, however, is not persuaded by Petitioner's speculation because the 1992 amendments to Michigan's parole statute authorize the director of the MDOC to remove parole board members for any

---

Spending. Consequently, the quantum of evidence referred to by the court and supportive of the plaintiffs' ex post facto arguments in *Foster Bey* was much more substantial and probative than that offered here.

9

number of reasons, including "incompetency, dereliction of duty, malfeasance, misfeasance, or nonfeasance in office." MICH. COMP. LAWS § 791.231a. Furthermore, this Court does not believe that the MDOC's increased receipt of funding for "[k]eeping violent felons longer than their court imposed date," (Pet. Ex. 13 at 5), means that a particular MPB member has a "direct, personal, substantial pecuniary interest" in the denying Petitioner parole. *DePiero*, 180 F.3d at 777. Therefore, Petitioner is not entitled to habeas relief on his third claim.

### III. Conclusion

For the reasons set forth above, the Court concludes that the Petitioner is not entitled to habeas relief on the claims presented in his petition.

Accordingly,

**IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:
Arthur Rouse
#274237
Pine River Correctional Facility
320 N. Hubbard
St. Louis, MI 48880

Rainia I. Korbakis, AAG